# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

Ross F. Plaetzer,                                    Court File No. _____

                    Plaintiff,

                                            **COMPLAINT AND JURY DEMAND**

v.

ESG Group Holdings, LLC, Employer
Solutions Group, LLC, PGIM CAPITAL
PARTNERS VI, L.P., PCP VI ESG
HOLDING, LP, PGIM CAPITAL
PARTNERS MANAGEMENT FUND
VI, L.P., Christopher L. Levine, Mark A.
Hoffmeister, and Clay E. Morel,

                    Defendants.

## PARTIES

1.     Plaintiff Ross F. Plaetzer is an individual who resides in Collier County,
Florida. Ross Plaetzer previously resided in Hennepin County, Minnesota.

2.     Defendant ESG Group Holdings, LLC is a Delaware limited liability
company with a principal place of business at 7201 Metro Blvd, Suite 900, Edina,
Minnesota 55439.

3.     Defendant Employer Solutions Group, LLC is a Minnesota limited liability
company with a principal place at 7201 Metro Blvd, Suite 900, Edina, Minnesota 55439.

4.     Upon information and belief, Defendants PGIM CAPITAL PARTNERS VI,
L.P., PCP VI ESG HOLDING, LP, and PGIM CAPITAL PARTNERS MANAGEMENT

FUND VI, L.P. (collectively "Prudential Entities") are mezzanine funds managed by PGIM Private Capital, which is the private capital arm of PGIM, a global investment management business of Prudential Financial, Inc. Upon information and belief, the Prudential Entities are domiciled in Ireland and have a principal place of business located at Prudential Tower, 655 Broad Street, Newark, New Jersey.

5.     Upon information and belief, Defendant Christopher L. Levine is a Colorado resident who resides in Larimer county in the state of Colorado.

6.     Upon information and belief, Defendant Mark A. Hoffmeister is an Illinois resident who resides in Cook county in the state of Illinois.

7.     Upon information and belief, Defendant Clay E. Morel is a Texas resident who resides in Harris county in the state of Texas.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the claims and parties identified in this action pursuant to 28 U.S.C. § 1331 (a) and (c), 28 U.S.C. § 1332 (a) and (c), and 28 U.S.C. § 2201(a). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. In addition, one or more claims arise under the laws of the United States.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) (2) as a substantial part of the events giving rise to the claim occurred in this district.

## INTRODUCTION

10.     Plaintiff Ross F. Plaetzer (Ross Plaetzer) is a co-founder, minority unitholder and board member of ESG Group Holdings, LLC and Employer Solutions Group, LLC.

Ross Plaetzer owns 37.5% of ESG Group Holdings, LLC and Employer Solutions Group, LLC.

11.    Prior to March 31, 2025, Ross Plaetzer was an employee of ESG Group Holdings, LLC and Employer Solutions Group, LLC.

12.    The Prudential Entities collectively own warrants for up to 25% of the units of ESG Group Holdings, LLC and Employer Solutions Group, LLC. The Prudential Entities have two seats on the board of directors of ESG Group Holdings, LLC and Employer Solutions Group, LLC.

13.    Upon information and belief, Christopher L. Levine (Chris Levine) owns 37.5% of ESG Group Holdings, LLC and Employer Solutions Group, LLC. Chris Levine is a board member of ESG Group Holdings, LLC and Employer Solutions Group, LLC. At all times relevant to the operative facts in this matter, Chris Levine was an employee of ESG Group Holdings, LLC and Employer Solutions Group, LLC.

14.    In the course of his employment, Chris Levine made a number of statements as further described below to Ross Plaetzer regarding Ross Plaetzer's age. For example, in February of 2025 Chris Levine stated to Ross Plaetzer "You're just an old man, Ross."

15.    On March 31, 2025, ESG Group Holdings, LLC and Employer Solutions Group, LLC terminated Ross Plaetzer's employment by having a Prudential Entities Board Member contacted Ross Plaetzer by phone and inform him in a 30 second phone call that the decision had been made (without Ross Plaetzer's involvement in the decision) to terminate his employment and end his day-to-day involvement in the business,

management and operations of ESG Group Holdings, LLC and Employer Solutions Group, LLC.

16.    Specifically, Prudential Entities Board Member Mark Hoffmeister told Ross Plaetzer, in a phone call that lasted a total of 30 seconds, that he was calling "as a member of the board" and that "the Board has decided to end you day-to-day involvement" in the ESG Entities. Defendant Hoffmeister ended the 30-second phone call by hanging up as Plaintiff was asking a question about why the decision had been made to end his day-to-day involvement in Employer Solutions Group.

17.    Ross Plaetzer, despite being a Board Member, was not informed of any meeting of the Board or other allowed action to discuss or effect termination of his employment and end his day-to-day involvement in the business, management and operations of Employer Solutions Group, LLC.

## FACTUAL BACKGROUND

### *Employer Solutions Group LLC*

18.    In 2005, Employer Solutions Group LLC was formed.

19.    Employer Solutions Group LLC was a limited liability company, initially with three members: Ross Plaetzer, Chris Levine and Darryl Peterson. Each owned one third of Employer Solutions Group LLC.

20.    Ross Plaetzer, Chris Levine and Darryl Peterson did not have written employment agreements with Employer Solutions Group LLC.

4

21.    Ross Plaetzer's employment role with Employer Solutions Group LLC initially included drafting and reviewing contracts, handling legal matters, dealing with unemployment claims, dealing with workers' compensation claims, handling compliance and regulatory matters and drafting company handbooks, among other duties.

22.    Ross Plaetzer was paid a weekly draw as opposed to as a W-2 employee.

23.    Ross Plaetzer's reasonable expectation was that he would have lifetime employment with Employer Solutions Group LLC as long as he maintained his ownership interest as a member of the limited liability company.

### *Employer Solutions Staffing Group, LLC*

24.    In December of 2006, Employer Solutions Staffing Group, LLC was formed. It is a staffing affiliated company.

25.    Employer Solutions Staffing Group, LLC is a limited liability company with the same members and the same ownership percentage as Employer Solutions Group LLC.

26.    Ross Plaetzer, Chris Levine and Darryl Peterson did not have written employment agreements with Employer Solutions Staffing Group, LLC.

27.    Ross Plaetzer had the same roles with Employer Solutions Staffing Group, LLC that he had with Employer Solutions Group LLC.

28.    Employer Solutions Staffing Group, LLC did not have a separate operating agreement.

*Employer Solutions Staffing Group II, LLC*

29.    In 2008, Employer Solutions Staffing Group II, LLC was formed. It was formed to operate in certain states that required separate workers' compensation insurance plans.

30.    The same members and the same ownership percentage existed in Employer Solutions Staffing Group II, LLC as existed in Employer Solutions Group LLC and Employer Solutions Staffing Group, LLC.

31.    Ross Plaetzer had the same roles with Employer Solutions Staffing Group II, LLC that he had with Employer Solutions Group LLC and Employer Solutions Staffing Group II, LLC.

32.    Employer Solutions Staffing Group II, LLC did not have a separate operating agreement.

33.    Employer Solutions Staffing Group III, LLC was formed but has been terminated.

34.    In 2008, Employer Solutions Staffing Group IV, LLC was formed for workers' compensations plans that needed particular risk profiles such as clerical or maritime risks.

35.    The same members and the same ownership percentage existed in Employer Solutions Staffing Group IV, LLC as existed in Employer Solutions Group LLC, Employer Solutions Staffing Group, LLC, and Employer Solutions Staffing Group II, LLC.

36.    Employer Solutions Staffing Group IV, LLC did not have a separate operating agreement.

37.    Employer Solutions Group LLC, Employer Solutions Staffing Group, LLC, and Employer Solutions Staffing Group II, LLC., and Employer Solutions Staffing Group IV, LLC are collectively referred to as the "ESG Entities."

38.    Ross Plaetzer had a reasonable expectation of lifetime employment in the ESG Entities as long as he remained an owner in the ESG Entities.

### Buy-Sell Agreements

39.    In 2008, Ross Plaetzer, Chris Levine and Darryl Peterson entered into a Buy-Sell Agreement which included a key man insurance policy and formalized the oral understanding of the owners that each owned 33.33% of each corporate entity.

40.    In 2012, the Buy-Sell Agreements were redone, again memorializing the one-third ownership of each member in each of the ESG Entities.

### Darryl Peterson's Death

41.    On August 9, 2020, Darryl Peterson died in an accident.

42.    After Darryl Peterson's death, Ross Plaetzer and Chris Levine discovered the extent that Darryl Peterson had fallen behind in paying all of the taxes due by the various ESG Entities starting in 2008.

### *Transaction with the Prudential Entities*

43.    In May 2022, the ESG Entities entered into a written transaction with the Prudential Entitles to resolve the ESG Entities' unpaid tax liabilities with the Internal Revenue Service.

44.    As part of the Prudential deal, the ownership claims with Darryl Peterson's estate were resolved and the ownership percentage of Chris Levine and Ross Plaetzer in the ESG Entities was increased to 50% each.

45.    The Prudential entities then collectively purchased warrants for between 20% and 25% of the units of the ESG Entities. This resulted in Ross Plaetzer and Chris Levine each owning 37.5% of each of the ESG Entities.

46.    The Prudential Entities have 2 seats on the board of directors.

47.    Ross Plaetzer and Chris Levine each have a seat on the board of directors.

48.    The fifth and final seat on the Board remains open and is for nomination of a proposed member by Ross Plaetzer and Chris Levine and approval by the Prudential entities.

49.    The Prudential deal recognizes and requires Ross Plaetzer's active day-to-day employment and active involvement in the business and management of the ESG Entities.

### *Ross Plaetzer's Employment at ESG Entities*

50.    Ross Plaetzer has worked 40 – 50 hours per week for the ESG Entities since 2005.

51.     Ross Plaetzer has spent more and more time and energy employed by ESG over time as the requirements of the companies have become more sophisticated in the 20 years from their beginning in 2005 until 2025.

52.     Ross Plaetzer's compensation as a salaried employee is set as a sum of $7,300 per week as approved by the Prudential Agreements.

53.     In an email dated April 11, 2025, an attorney representing the ESG Entities confirmed Ross Plaetzer's status as an employee of the ESG Entities.

54.     The April 11, 2025 email states "As you point out you are not an employee for tax purposes. However, you may have certain employment rights under state and federal regulations."

55.     Ross Plaetzer was also considered a key employee of ESG as evidenced by specific paragraphs in two key agreements among the various parties to this action. A section in the Investor Rights Agreement with the Prudential Entities states in the Defined Terms, Section 11A, that a "Change of Control" occurs when (e)

> Chris Levine or Ross Plaetzer shall cease to be involved in the day-to-day operations and management of the business of the Credit Parties and a successor reasonably acceptable to the Required Holders is not appointed on terms reasonably acceptable to the Required Holders within 60 days of such cessation of involvement; or ….

56.     A section of the Loan Agreement dated as of April 10, 2024, by and among ESG Group Holdings, LLC, and Employer Solutions Staffing Group II, LLC as the Borrowers, and Midwestone Bank, as the Lender, states in part that a

> "Change of Control" means each occurrence of any of the following:
>
> ….

(e) Chris Levine or Ross Plaetzer shall cease to be involved in the day-to-day operations and management of the business of the Obligors and a successor reasonably acceptable to the Lender is not appointed on terms reasonably acceptable to the Lender within 60 days of such cessation of involvement; or …

57.     On June 2, 2025, more than 60 days after the termination of Ross Plaetzer, Chris Levine instructed an ESG employee to send an email to ESG employees attempting to calm down anxiety about the status of the ESG Entities.

58.     Despite the fact that Ross Plaetzer did not participate in the drafting of the text or approve the message and had been told on March 31, 2025, that his involvement in the day-to-day operations of the ESG Entities had been terminated, Chris Levine instructed the employee to falsely convey to ESG employees Ross Plaetzer's support of the message.

59.     The email stated in full:

Hello,

This year marks an incredible milestone—20 years in business! As we celebrate this achievement, we want to take a moment to express our deepest gratitude to each of you. Our success over the past two decades is not just about numbers or services—it's about the people who make it all possible. Your dedication, hard work, and passion have built this company into what it is today. Whether you've been with us from the beginning or joined along the way, you are an essential part of our story. Through every challenge and every success, your resilience and teamwork have been the foundation of our journey. Your contributions and commitment have not only helped us grow but have made this company a place we are proud to be a part of. As we look to the future, we do so with immense respect and admiration, knowing that with this incredible team, there are no limits to what we can achieve together. Thank you for your commitment, your talent, and most importantly, the heart you bring to this company every day.

With appreciation, Chris and Ross

60.     As of early October 2025, Ross Plaetzer was still listed on ESG's website (https://www.employersolutionsgroup.com/our-team) under "Senior Leadership" as "Client Services Director."

61.     Beginning around October 16, 2025, Ross Plaetzer was listed on ESG's website as simply "Founder" with no indication of his continuing status as a partial owner of ESG.

62.     Beginning around November 19, 2025, mention of Mr. Plaetzer was removed completely from ESG's website. Chris Levine is listed as "CEO/Owner," not his accurate status as a co-owner.

### *ESG Conduct Regarding On Ross Plaetzer's Age*

63.     Chris Levine is 56 years old.

64.     Darryl Peterson would have been 62 years old if he had not passed away in the accident in 2020.

65.     Ross Plaetzer is 71 years old.

66.     Since Darryl Peterson's death, Chris Levine has made a number of comments to Ross Plaetzer focused on his age.

67.     In August of 2020, Chris Levine said to Ross Plaetzer "I thought you'd be the first to die."

68.     In 2024 and 2025, this conduct escalated.

69.     In late summer of 2024, Chris Levine accused Ross Plaetzer of having dementia and forgetting things. The conversation ended with Chris Levine saying: "You're an old man, Ross. How old are you, Ross?"

70.     In January 2025, Chris Levine told other employees "Don't talk to Ross, he's clueless."

71.     In mid-February 2025, Chris Levine represented that he could do whatever he wanted and that Ross Plaetzer had "no say anymore." When Ross Plaetzer reminded him of the Operating Agreement which limited his decision-making authority, Chris Levine responded by saying "You're just an old man, Ross." and hung up the phone.

72.     Shortly thereafter, on March 31, 2025, a Prudential Entity board member called Ross Plaetzer and ended his employment and day-to-day involvement in the ESG Entities.

## **TRIAL BY JURY**

73.      Plaintiff is entitled to and hereby respectfully demands a trial by jury of all issues so triable. U.S. Const. amend. 7; Fed. R. Civ. P. 38.

## **CAUSES OF ACTION**

## **COUNT I**
## **AGE DISCRIMINATION IN EMPLOYMENT ACT**
## **(29 U.S.C. § 621 et. seq)**

74.     All preceding paragraphs are incorporated by reference as if fully set forth in this Count.

75.     Ross Plaetzer is over 40 years old.

76.    Ross Plaetzer met the applicable job qualifications and in fact held the role at the ESG Entities from 2005 until 2025 from which he was terminated.

77.    Ross Plaetzer suffered an adverse employment action. Ross Plaetzer was terminated from his employment role in the ESG Entities.

78.    Ross Plaetzer's age was the motivating factor in his termination.

79.    Defendant Employer Solutions Group, LLC is an employer qualified to do business in Minnesota and employs more than 50 regular employees.

80.    All conditions precedent to subject matter jurisdiction of this Claim and of Defendant Employer Solutions Group, LLC have occurred or been complied with. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

81.    On September 19, 2025, Ross Plaetzer filed a charge with the EEOC regarding the discriminatory conduct of Defendant Employer Solutions Group, LLC. The EEOC has not yet issued a Notice of Right to Sue letter. Since Ross Plaetzer filed a charge of discrimination with the EEOC regarding the discriminatory conduct of Defendant Employer Solutions Group, LLC, 60 days or more have elapsed.

82.    As a result of Ross Plaetzer's wrongful termination Ross Plaetzer has suffered damages, will continue to suffer damages, and is entitled to damages, including backpay and front pay, in an amount exceeding $75,000, exclusive of interest and costs.

<u>**COUNT II**</u>
<u>**VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT**</u>
<u>**(MINN. STAT. § 363A.01 et seq.)**</u>

83.     All preceding paragraphs are incorporated by reference as if fully set forth in this Count.

84.     By virtue of the above-conduct, Defendants wrongfully discriminated against Plaintiff because of his age in the terms, conditions, and privileges of employment in violation of the Minnesota Human Rights Act (MHRA), Minnesota Statutes Sections 363A.08, subd. 2(2) and 363A.08, subd. 2(3).

85.     As a result, Plaintiff was injured and sustained damages, past and future, including loss of income, benefits, compensatory damages, and other damages, in excess of $75,000.

<u>**COUNT III**</u>
<u>**AIDING AND ABETTING DISCRIMINATION IN VIOLATION OF THE**</u>
<u>**MINNESOTA HUMAN RIGHTS ACT**</u>
<u>**(MINN. STAT. § 363A.14)**</u>

86.     All preceding paragraphs are incorporated by reference as if fully set forth in this Count.

87.     Beginning on or around July 2024, Individual Defendant Chris Levine took various discriminatory actions against Plaintiff based on age. In late summer of 2024, Chris Levine accused Plaintiff of having dementia and forgetting things, stating the he (Levine) was not the only one talking about this alleged fact. The conversation ended with Chris Levine saying: "You're an old man, Ross. How old are you, Ross?" In December 2025, Chris Levine told Mr. Plaetzer that he should retire and "start enjoying life." In January

14

2025, Chris Levine told other employees, "Don't talk to Ross, he's clueless." In February of 2025, when Plaintiff reminded Chris Levine about Operating Agreements limiting Chris Levine's solitary decision-making power, Chris Levine responded by saying, "You're just an old man, Ross."

88.     Individual Defendants Hoffmeister and Morell were aware of Chris Levine's discriminatory age-based conduct directed at Plaintiff.

89.     Based on such knowledge, Hoffmeister and Morell provided substantial assistance and encouragement to Chris Levine's discriminatory age-based conduct by failing to intervene and end Chris Levine's conduct despite having the ability and authority to do so, and further by agreeing with Chris Levine as board members or officers of the ESG Entities to terminate Plaintiff's involvement in the day-to-day operation and management of the ESG entities.

90.     On March 31, 2025, Plaintiff's employment and day-to-day involvement in the ESG Entities was terminated.

91.     The intentional actions and failures to act of Hoffmeister and Morell aided and abetted the underlying age-based discriminatory conduct of Chris Levine against Plaintiff, which resulted in Plaintiff's termination of employment and day-to-day involvement in the ESG Entities.

92.     By virtue of aiding and abetting Chris Levine's unlawful age-based conduct against Plaintiff, Hoffmeister and Morell wrongfully aided and abetted discrimination against Plaintiff because of his age in the terms, conditions and privileges of employment

in violation of the Minnesota Human Rights Act (MHRA), Minnesota Statutes Section 363A.14.

93.    As a result, Plaintiff was injured and sustained damages, past and future, including loss of income, benefits, compensatory damages, and other damages, in excess of $75,000.

## COUNT IV
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

94.    All preceding paragraphs are incorporated by reference as if fully set forth in this Count.

95.    The Operating Agreement is a valid and enforceable contract under which Plaintiff and Defendants owe one another an implied covenant of good faith and fair dealing.

96.    Defendants breached this implied covenant by engaging in a pattern of conduct intended to deny Plaintiff the benefits of the parties' agreement and by failing to deal openly, honestly and fairly with one another and to treat one another with the highest standards of integrity and good faith in their dealings with one another.

97.    Defendants acted in an oppressive and unfairly prejudicial manner toward Ross Plaetzer by, *inter alia*, the following acts:

       a.  Terminating the employment of Ross Plaetzer despite his reasonable expectation of lifelong employment as a founder, minority owner and member of the ESG Entities;

  b. Terminating the employment of Ross Plaetzer and ending his monetary weekly draw on the basis of his age;

  c. Terminating the employment of Ross Plaetzer despite the acknowledgements in both the Prudential Agreement and the MidwestOne Bank loan agreement of the requirement of day-to-day employment of Ross Plaetzer and his continued involvement in the operation and management of the ESG entities ; and

  d. Holding board meetings without notifying Ross Plaetzer, including the board meeting where the decision was made to terminate his employment and end his draw.

98. Defendants' conduct has frustrated and interfered with Plaintiff's reasonable expectations as a founder, owner and member of the ESG Entities.

99. Defendants have acted in a manner that is wrongful, unfairly prejudicial and oppressive toward Ross Plaetzer in his capacity as a founder, owner and member of a limited liability company, or as an officer or employee of a limited liability company.

100. Defendants' conduct violates the implied covenant of good faith and fair dealing and is oppressive under applicable law, and has been, is, and will be directly harmful to Plaintiff.

101. Plaintiff is entitled to equitable relief or dissolution of the ESG Entities and liquidation of their assets.

102. Plaintiff is entitled to an order requiring Defendants to purchase Plaintiff's units at fair value.

103.    As a result, Plaintiff has suffered damages, will continue to suffer damages, and is entitled to damages in an amount exceeding $75,000, exclusive of interest and costs.

## COUNT V
## VIOLATION OF MINN STAT. §§ 302C.070, subd. 1(5)

104.    All preceding paragraphs are incorporated by reference as if fully set forth in this Count.

105.    In Minnesota, members and board members of a limited liability company must discharge their

> duties and exercise any rights under … chapter [322C] or under the operating agreement consistently with the contractual obligation of good faith and fair dealing, including acting in a manner, in light of the operating agreement, that is honest, fair, and reasonable.

Minn. Stat. § 322C.0409, subd. 4.

106.    As ESG members and board members, Defendants also owed and continue to owe Ross Plaetzer the fiduciary duty of the highest standards of the integrity and good faith in their dealings with each other.

107.    Defendants, as board members of a board-managed limited liability company owed a fiduciary duty to Plaetzer as a fellow member of the board. Minn. Stat. § 322C.0409, subds. 1 and 8(1) ("A member of … [the board of a board-managed ] limited liability company owes . . . the other members [of the board] the fiduciary …[duty of] care stated in subdivision[] … 3.").

108.    Defendants acted in an oppressive and unfairly prejudicial manner toward Ross Plaetzer by, *inter alia*, the following acts:

a. Terminating the employment of Ross Plaetzer despite his reasonable expectation of lifelong employment as a founder, minority owner and member of the ESG Entities;

b. Terminating the employment of Ross Plaetzer on the basis of his age;

c. Terminating the employment of Ross Plaetzer despite the acknowledgement in the Prudential Agreement of the requirement of day-to-day employment of Ross Plaetzer; and

d. Holding board meetings without notifying Ross Plaetzer, including the board meeting where the decision was made to terminate his employment.

109.    Defendants' conduct has frustrated and interfered with Plaintiff's reasonable expectations as a founder, owner and member of the ESG Entities.

110.    Defendants have acted in a manner that is wrongful, unfairly prejudicial and oppressive toward Ross Plaetzer in his capacity as a founder, owner and member of a limited liability company, or as an officer or employee of a limited liability company.

111.    Defendants' conduct is oppressive, within the meaning of Minn. Stat. § 322C.0102, subdivision 18, and has been, is, and will be directly harmful to Ross Plaetzer.

112.    Plaintiff is entitled to equitable relief or dissolution of the ESG Entities and liquidation of their assets under Minn. Stat. § 322C.0701, subd. 1(5).

### COUNT VI
### CIVIL CONSPIRACY TO DEPRIVE MEMBER OF BENEFITS OF EMPLOYMENT AND OWNERSHIP

113.    All preceding paragraphs are incorporated by reference as if fully set forth in this Count.

114.    Delaware law makes it unlawful for a combination of two or more persons to accomplish, by some concerted action, some unlawful purpose, or some lawful purpose by a unlawful means when there is resultant damage caused to Plaintiff by Defendants' acts committed in furtherance of the conspiracy.

115.    At all relevant times, Defendants agreed to and did conspire to willfully and maliciously injure Ross Plaetzer in his reputation, trade, business or profession through the acts committed by Defendants, as described below.

116.    Defendants knowingly, willfully and intentionally conspired and agreed to conduct and participate unlawfully in the conduct of the affairs of the ESG Entities as described in this Complaint.

117.    Ross Plaetzer had a reasonable expectation of continuing employment by the ESG Entities until such time as Ross Plaetzer might choose to retire from active involvement in the day-to-day operations of the ESG Entities or the business is sold.

118.    Defendants, and each of them, also conspired to commit the acts alleged herein, in that all Defendants conspired to accomplish removing Plaintiff from the day-to-day operations of the ESG Entities, thereby terminating his reasonable expectation of continued employment with the ESG Entities, and had a meeting of the minds to accomplish these goals through one or more unlawful acts under applicable Delaware law and Plaintiff suffered harm as a result of Defendants' unlawful conduct and conspiracy.

119.    As a direct and proximate consequence of Defendants' conspiracy, Plaintiff has been injured in his business, property and reputation, causing Plaintiff to suffer monetary damages in an amount not less than $75,000.

120.    Defendants' conduct as alleged in this Complaint was done in furtherance of their own private interests, and was willful, malicious, wanton and oppressive, and was done with conscious and callous indifference to the consequences and with specific intent to harm Plaintiff.

## COUNT VII
## TORTIOUS INTERFERENCE WITH CONTRACT [REASONABLE EXPECTATION OF CONTINUED EMPLOYMENT]

121.    All preceding paragraphs are incorporated by reference as if fully set forth in this Count.

122.    Ross Plaetzer entered into a valid and enforceable contract with the ESG Entities on or about March 1, 2005, whereby Ross Plaetzer had a reasonable expectation of continuing employment by the ESG Entities until such time as Ross Plaetzer might choose to retire from active involvement in the day-to-day operations and management of the ESG Entities or the business is sold.

123.    At all relevant times, Defendants were aware of the existence of this contractual relationship and expectation.

124.    On or about March 31, 2025, Defendants intentionally and without justification agreed to interfere with and did interfere with Plaintiff's contractual relationship by terminating Plaintiff's employment with ESG by means of illegal and unauthorized acts agreed to by Defendants.

125.    Defendants' actions were willful, intentional and done with actual knowledge that they would disrupt and adversely affect Plaintiff's contractual rights.

126.    Plaintiff has suffered actual damages as a direct result of the interference in an amount exceeding $75,000, exclusive of interest and costs.

## COUNT VIII
## BREACH OF CONTRACT

127.    All preceding paragraphs are incorporated by reference as if fully set forth in this Count.

128.    Ross Plaetzer entered into a valid and enforceable contract with the ESG Entities on or about March 1, 2005, whereby Plaintiff had a reasonable expectation of continuing employment until Plaintiff might decide to retire from active involvement in the day-to-day operations of the ESG Entities or the ESG Entities were sold .

129.    At all relevant times, Defendants were aware of the existence of this contractual expectation.

130.    Plaintiff performed all duties as required by the ESG Entities.

131.    On or about March 31, 2025, Defendants terminated Plaintiff's employment with ESG and thereby failed to honor the duration of Plaintiff's expected employment.

132.    As a direct and proximate result of Defendants' breach of Plaintiff's contract of employment, Plaintiff suffered damages, including lost wages in an amount exceeding $75,000.

## PRAYER FOR RELIEF

Plaintiff prays for judgment as follows:

1.    Granting judgment in favor of Plaintiff on his Complaint and against Defendants on each of the Counts in this Complaint;

2.      Awarding Plaintiff money damages in an amount exceeding $75,000;

3.      Awarding damages including income, employment benefits, or other compensation, past and future, denied to Plaintiff by reason of the violations under Counts I - VIII.

4.      Dissolving the ESG Entities and liquidating their assets.

5.      Ordering and requiring Defendants to purchase Plaintiff's units at fair value.

6.      Granting injunctive relief to Plaintiff to prevent further oppressive conduct.

7.      Awarding Plaintiff his reasonable costs, disbursements, interest and attorneys' fees herein; and

8.      Awarding such other relief as the Court deems just and equitable.

Dated: January 5, 2026                          **BRIOL & BENSON, PLLC**

By:   /s/ Mark J. Briol
       Mark J. Briol (#126731)
       Scott A. Benson (#0198419)
       Darren B. Schwiebert (#0260642)
       30 South Ninth Street
       7th Floor
       Minneapolis, MN 55402
       (612) 756-7777

       *Attorneys for Plaintiff Ross F. Plaetzer*